J. WINTHROP SIAS vs. LOWELL, LAWRENCE AND HAVER-
HILL STREET RAILWAY COMPANY & another.

Middlesex.    March 13, 1901. — June 18, 1901.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Negligence*, Towards employee of another using poles in common.

A street railway company owning and maintaining poles supporting wires that hold
and protect its trolley wires, which has granted to a telephone company for a
consideration the right to use its poles for the purpose of supporting telephone
wires, is not liable for negligence to an employee of the telephone company who
falls by reason of an electric shock received by him while attempting to tighten
a slack span wire of the railway company. The highest duty owed by the rail-
way company to a person thus at work upon its wires without its permission, is
not wilfully or wantonly to injure him.

TORT to recover for injuries from a fall caused by the plain-
tiff, an employee of the Peoples Telephone Company, receiving
an electric shock while lawfully on a pole owned and maintained
by the defendant the Haverhill and Amesbury Street Railway
Company, the electric power being furnished by the defendant
the Lowell, Lawrence and Haverhill Street Railway Company.
Writ dated August 31, 1899.

At the trial in the Superior Court, before *Gaskill*, J., it ap-
peared, that the pole in question was one of a series of poles
belonging to the defendant the Haverhill and Amesbury Street
Railway Company, which owned and operated an electric street
railway line running from Washington Square in Haverhill
through Emerson and White Streets to Charles Street toward
Amesbury, and which controlled the continuous system of
guard and span wires over its trolley wire for the support and
protection of the latter; but the electric power used for propel-
ling the cars was furnished to it by the defendant the Lowell,
Lawrence and Haverhill Street Railway Company under a
contract.

It further appeared, that these poles were used by the Peoples
Telephone Company under a written agreement, dated Octo-
ber 27, 1897, which, omitting the introductory and attesting
paragraphs, was as follows: "That the said Haverhill & Ames-

bury Street Railway Co. hereby agrees to allow said Peoples Telephone Co. the right to use its poles for the purpose of conveying wires and cables from Washington Square to Kaulbacks. Said Telephone Company agrees to pay said Railway Company the sum of ·$ .25 per pole annually for the use of said poles. The said Peoples Telephone Company also agrees to furnish said Haverhill & Amesbury St. Railway Co. one telephone at $24. per year. The rental in both instances to be payable ·annually on the first day of January, and to put in a telephone at Kaulbacks and at Holden's Drug Store for the use of said Railway Co. And it is further agreed that the Peoples Telephone Co. will assume all risks as to any damages which might arise from or to their employees while working on the poles of said Railway Company."

The plaintiff objected to the admissibility of the part of the agreement in the last sentence printed above. The judge admitted it, and the plaintiff excepted. The decision of the court has made this exception immaterial.

Evidence was introduced of which the substance is stated in the opinion of the court. At the conclusion of the evidence, the judge ruled that the plaintiff could not recover and ordered a verdict for the defendants. The verdict was returned as directed; and the plaintiff alleged exceptions.

*W. H. Baker,* (*E. Lowe* with him,) for the plaintiff.

*J. P. Sweeney,* for the Lowell, Lawrence and Haverhill Street Railway Company.

*W. I. Badger,* for the Haverhill and Amesbury Street Railway Company.

HAMMOND, J. Without considering the question whether the plaintiff was in the exercise of due care, we think a verdict for the defendants was rightly ordered.

The pole from which the plaintiff fell was one of a series of poles extending through Emerson and White Streets in Haverhill, and owned by the Haverhill and Amesbury Street Railway Company. By the writing of October, 1897, this company granted to the Peoples Telephone Company the right to use these poles among others, "for the purpose of conveying wires and cables," the telephone company paying a certain consideration therefor and agreeing to "assume all risks as to any dam-

ages which might arise from or to their employees while working on the poles."

Upon these poles, at the time of the accident, were two sets of wires, one owned and used by the street railway company and one by the telephone company. The night before the accident a telephone in a house near White Street had burned out. Bunce, a foreman of the telephone company, investigated, and located the "leakage" of electricity as being at the iron pole next to the wooden pole from which the plaintiff fell. He found that the insulation of a telephone wire attached to the iron pole was burned off, and the wire was lying across one of the railway company's guard wires supporting the guard wire running over the trolley. This showed that the guard wire in some way and at some time had become charged, and that there had been "a leakage" of electricity into it, and from it into the telephone wire.

The next morning Bunce, with the plaintiff, both being servants of the telephone company, started out "to clear the trouble." He testified that the guard wire over and parallel with the trolley wire had sagged, so that there was danger that the trolley wire might be pushed against it by the trolley of a passing car, and he thought that the "leakage" into the guard wire over which he saw the damaged telephone wire lying might have been caused in that way. This sagging was caused in part by the slackness of the span wire by which it was connected with the poles, and Bunce with the plaintiff began to "pull the slack out of the" span wire. After fixing the span connected with the iron pole, they proceeded to the wooden pole. The plaintiff, upon being asked whether he or Bunce should go up the pole, said he would go. He mounted the pole for the purpose of tightening the span wire. He released the span wire from the insulator near the pole, put a strap in which there was a small vise around the pole, then tightened the wire which he held, by means of the vise and strap, and while in the act of attaching the wire to the insulator received a shock and fell.

It is thus seen that the plaintiff was injured while at work upon a wire of the railway company. It does not appear that this was at the request or solicitation of the railway company. It is true that there is evidence tending to show that so far as

respected the rake or cant of the poles there was an understanding between the two companies that the telephone company would put them in proper shape, but nothing appears as to the wires. It does not appear that the telephone company was expected to repair or meddle with the wires of the railway company except perhaps to keep the poles at the proper rake, or that the latter solicited or allowed the former to interfere with its wires. The plaintiff at the time of his injury was at work not upon a telephone wire but upon a wire of the railway company, without its permission express or implied. While the plaintiff was thus at work the highest duty the railway company owed to him was that of not wilfully or wantonly injuring him.

There is still less reason for holding the Lowell, Lawrence and Haverhill Street Railway Company answerable. It owned neither pole nor wires. It is true that it supplied the power, and there was evidence tending to show that there was imperfect insulation of its wires, but this was at a point several hundred feet away from the place of the accident, and the evidence failed to show that the injury to the plaintiff was in any way attributable to that condition of its wires, but it tended to show the contrary, inasmuch as the contact which charged the wire, and of which the plaintiff complained, was caused by the sagging of the wire which was above the trolley wire, to such an extent as to touch the trolley wire when pushed against it by the trolley of a passing car.

*Exceptions overruled.*